## John R. BENNETT, Petitioner-Appellant,

v.

## Gene SCROGGY, Respondent-Appellee.

No. 85–5388.

United States Court of Appeals, Sixth Circuit.

Argued April 28, 1986.

Decided June 19, 1986.

---

R. Neal Walker (argued), Lexington, Ky., Kentucky Dept. of Public Advocacy, Frankfort, Ky., for petitioner-appellant.

John S. Gillig (argued), Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before ENGEL, KENNEDY and MILBURN, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

John Bennett, petitioner-appellant, appeals from the District Court's denial of his petition for writ of habeas corpus. Appellant claims that in his murder trial, the state court erred in: (1) refusing to instruct the jury on two lesser included offenses, and (2) refusing to grant a continuance so that appellant could secure the attendance of a witness who would have testified favorably to him. Appellant claims that the first error violated his fourteenth amendment right to due process and that the second error violated his sixth amendment right to compulsory attendance of witnesses and his fourteenth amendment right to due process. Because we agree with appellant's second claim, we reverse the District Court and remand with instructions to grant the petition.[1]

Appellant was indicted by a Campbell County, Kentucky, grand jury for the murder of Vicky Westerfield, in violation of K.R.S. 507.020. After his trial in August 1982, the jury convicted him of first degree manslaughter and imposed the maximum sentence—20 years. The Supreme Court of Kentucky considered the merits of the allegations of error that are now before this Court and affirmed the conviction. *Bennett v. Commonwealth*, No. 83–SC–28–MR (Ky.1983). Appellant filed a petition for habeas relief in the United States District Court for the Eastern District of Kentucky. The court ultimately adopted the magistrate's recommendation that the petition be dismissed.

The Supreme Court of Kentucky found the following facts, which appellant does not dispute.[2] Appellant and his girl friend, Susie, drove into the parking lot of the Kit Kat Club, a night club in Newport, Kentucky, at about 2:30 a.m. on March 17, 1982. They waited for an employee, a woman named Tammy, to get off work. When Tammy exited she was with Westerfield (the deceased). Westerfield approached appellant and Susie and informed them that she wanted Tammy to accompany her rather than appellant and Susie. Westerfield and Susie began arguing. Fearing for Susie's safety, appellant, who was wearing a full leg cast on his left leg, moved between the two women. When Westerfield edged closer to appellant "in a dare-type fashion," *Bennett*, slip op. at 2, appellant brandished a pistol that he had kept inside his belt. Westerfield backed away, and appellant put the gun back inside of his belt. Westerfield then resumed moving closer to appellant and "dared Bennett to shoot her." *Id.* Appellant fired two warning shots, one above Westerfield's head and one at the ground. Westerfield, however, continued to advance at appellant with her hands behind her. Appellant fired a third shot into Westerfield's chest.[3] Ap-

---

1. In light of the Supreme Court of Kentucky's clarification of Kentucky's criminal statutes, we find it unnecessary to decide whether, at the time of appellant's first trial, he was entitled to instructions on the two lesser included offenses.

2. Appellant does contend that the Supreme Court of Kentucky's rendition of the facts is incomplete.

3. One witness for the prosecution testified that the two were five or six feet apart when the third shot was fired. However, Warren Mitchell, a firearms examiner, testified that the weapon was fired "within one inch" of Westerfield, and that the size and nature of the hole in Westerfield's shirt indicated that the barrel of the gun was probably in contact with the shirt when the fatal shot was fired.

pellant hastily got into his car and a friend drove him across the Ohio River into Cincinnati, where he was promptly apprehended by officers of the Cincinnati Police Department. Westerfield died within minutes of the shooting.

Appellant's theory at trial was, in essence, that he acted to protect himself from Westerfield. Appellant testified that he thought Westerfield was reaching behind herself for a knife on her belt as she approached appellant. William Stewart, a doorman at the club, testified that Westerfield routinely carried a knife, usually on her belt. Terry Gugle, a Newport police sergeant, testified that he found a knife among Westerfield's belongings at the hospital she was taken to after the shooting.[4] Dr. Charles Stevens, a forensic pathologist, testified that at the time of death, Westerfield had a blood alcohol content of 0.29 percent, and that she had taken phenobarbital that night.

## I.

We begin by examining appellant's claim based on the refusal of the trial court to continue the trial so that appellant could secure the attendance of a subpoenaed witness. The witness, Robert Bridewell, a close acquaintance of Westerfield, was scheduled to testify that Westerfield had a reputation for violence and that she would be likely to attack a man with her knife.

The Supreme Court has recognized that the right to offer the testimony of witnesses and compel their attendance is constitutionally protected. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) (relying on the sixth amendment and due process of law). Failure to grant a continuance to enable a

defendant to exercise that right is, under certain circumstances, a denial of due process. *See Hicks v. Wainwright*, 633 F.2d 1146, 1148–49 (5th Cir.1981). The Court has recognized, in the context of a defendant's assertion of his sixth amendment right to counsel, that the constitutionality of a trial judge's refusal to grant a continuance depends on the circumstances of each particular case, evaluated in the light of the judge's traditional discretion to grant or deny such motions. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964);[5] *see also Hicks*, 633 F.2d at 1148–49 (applying *Ungar* to the right to compulsory process).

The Fifth Circuit has enumerated a list of factors reviewing courts should consider in determining whether an accused was deprived of his rights to compulsory process and due process by a denial of a motion for continuance:

the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Hicks*, 633 F.2d at 1149 (*quoting United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir.1976) (footnotes omitted)); *see also Dickerson v. Alabama*, 667 F.2d 1364, 1370 (11th Cir.1982). The Fifth Circuit in *Hicks* also stated, "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally

---

**4.** Apparently, the knife was in a tote bag that Westerfield was carrying over her shoulder at the time of the shooting.

**5.** The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insis-

tence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Id.* (citations omitted).

unfair that it violates constitutional principles of due process." 633 F.2d at 1148. There must also be some showing that granting the continuance would have furthered the court's attempt to secure a just determination of the cause. *See United States v. Fearwell*, 595 F.2d 771, 780 (D.C. Cir.1978).

Turning to the factors delineated by the Fifth Circuit, we note first that appellee does not dispute that appellant was diligent in interviewing Bridewell and procuring his presence. According to the uncontradicted affidavit of appellant's trial attorney, Michael Schulkens, Schulkens personally served the subpoena on Bridewell and gave him directions to the courthouse. The trial judge was aware of the fact that Bridewell was personally served by Schulkens. Appellee also does not deny that appellant's request was for a reasonable amount of time and that it was likely that he would have located Bridewell within that time period. According to Schulkens' affidavit, Bridewell lived in Newport, and thus he probably could have been located overnight. Appellant also made a proper showing of the nature of the expected testimony from Bridewell. Schulkens specifically told the court that Bridewell would testify about Westerfield's reputation for violence, and Schulkens also offered to submit his affidavit to that effect, in lieu of Bridewell's live testimony. Finally, there is no denying that testimony about Westerfield's reputation for violence was expected to be favorable to defendant; defendant was attempting to convince the jury that he acted out of a perceived need to protect himself.

In light of appellee's concessions regarding the first four factors set forth in *Hicks*, the critical question is whether the testimony was unique and non-cumulative. The District Court, in denying appellant's petition, relied on the conclusion of the Supreme Court of Kentucky that the testimony of the missing witness Bridewell would have been merely cumulative. The Supreme Court of Kentucky based its conclusion on a finding that many of the Commonwealth's witnesses—and appellant himself—testified concerning Westerfield's reputation.[6] Appellant disputes that finding.

The findings of state courts are entitled to a presumption of correctness in habeas corpus proceedings. 28 U.S.C. § 2254(d); *see also Loveday v. Davis*, 697 F.2d 135, 138 (6th Cir.1983) (applying the presumption to findings of a state appellate court). Such findings are binding on federal courts, however, only if fairly supported by the record as a whole. *See* 28 U.S.C. § 2254(d)(8). In this case, we can readily determine whether there is fair support for the state court's finding; we need merely to examine the transcript to determine whether other witnesses testified about Westerfield's reputation for violence. Having read the transcript, we find no testimony whatsoever—aside from appellant's—about Westerfield's reputation for violence. Not only is such testimony absent from the record, the attorney for the Commonwealth capitalized on its absence during his closing argument.

> The testimony of the other witnesses is [sic] all indicated that she didn't have the knife ut [sic] that night, that she didn't have any weapon on her. There has been testimony from only one witness in this whole trial that she had a reputation for violence. William Stewart testified that he had seen her with a knife but only one person said she had a reputation for violence and who was that? That was the defendant. You know, there were other people that testified that you heard but they were never asked that question. Think about that. As a good lawyer, you don't ask a question that you don't know the answer to andunless [sic] you'll get burned on it. You let the other guy do that. But the question wasn't asked to her friends, to the people that knew her, do you know her reputation for violence, the question was only

---

**6.** Because Bridewell failed to appear, the only witness to testify on appellant's behalf was appellant himself.

asked to the defendant and I submit to you that's a self-serving statement. (Tr. at 279).

Appellee conceded at oral argument that appellant was the only witness to testify about Westerfield's reputation for violence. Appellee did argue that, nevertheless, Bridewell's testimony would have been merely cumulative of other evidence that Westerfield was a violent person. We find the other evidence pointed to totally inadequate under the circumstances. Appellee relies first on the fact that Westerfield was a go-go dancer. It hardly needs mentioning that there is no reason to believe that persons who choose go-go dancing as an occupation tend to be more violent than the population as a whole. Next appellee points to the testimony of William Stewart that Westerfield routinely carried a knife on her belt. Although such conduct would certainly be consistent with a reputation for violence, it is far from proof itself of such a character trait. Furthermore, the jurors might very well have put evidence of that conduct together with the other alleged evidence of violence—i.e., the fact that she was a go-go dancer—and concluded that Westerfield carried a knife, not because she was violent, but because she wanted to be able to defend herself against potentially aggressive patrons of her place of employment.

Appellee's final category of other evidence of Westerfield's violent character is testimony about her actions immediately preceding the shooting: the fact that she kept coming at appellant despite the warning shots, and that she dared him to shoot her. Appellee contends that if the jury cared about Westerfield's violent nature, this evidence was enough to convince them

of it. We disagree. The jury may very well have believed that Westerfield's actions were not the actions of a violent person. The jury knew that Westerfield had a blood alcohol content of 0.29 percent and thus might have believed that the alcohol caused her to act in an unsound, careless—and yet non-violent—manner. In fact, the Commonwealth's attorney told the jury in his closing argument that her intoxication was "very important." (Tr. at 276). He proposed to the jury that, in light of Westerfield's inebriated state, appellant would have had no difficulty handling her, that he could have just pushed her away. Significantly, appellant's decision, in the heat of the moment, whether he could have safely pushed Westerfield back or even turned away from her and climbed into his car without incident depended almost entirely on his perception, as she moved to within arm's reach of him, of her proclivity for committing violent acts.[7] Hence, appellant's decision reasonably could have been affected to a large extent by her reputation for violence.[8]

■ Appellant was the only witness to testify about Westerfield's reputation for violence. Although appellant's defense of self-protection turned on what he actually believed, the testimony of others about her reputation was critical to appellant's defense. Cf. Skipper v. South Carolina, — U.S. ——, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (1986) (holding that excluded testimony of other jailers regarding the petitioner's behavior in jail is not cumulative of petitioner's testimony, because the jury would naturally discount petitioner's testimony as self-serving). This is especially true in light of the prosecutor's closing argument,

---

7. We also note that appellant did not enjoy the full benefit of available evidence of Westerfield's actions that morning. The trial judge sustained the Commonwealth's apparently unfounded hearsay objection to testimony by eyewitnesses as to what Westerfield said as she approached appellant. The testimony most likely was not offered for the truth of what Westerfield said; rather, it was offered to show whether appellant would have believed he needed to protect himself.

8. Westerfield's reputation for violence was also undeniably important due to the context of the confrontation between Westerfield and appellant. Appellant's mobility was significantly impaired by his leg cast. Furthermore, the testimony revealed that the difference in size between the two persons was not very great. Westerfield was 5'7" tall and weighed 120 pounds; appellant was 5'10" tall and weighed between 135 and 140 pounds.

which suggested that appellant's statements on the stand about Westerfield's reputation were merely self-serving. The trial judge's failure to grant an overnight continuance (which would have commenced during the early afternoon) effectively denied appellant the opportunity to present his only defense. Cf. *Johnson v. Johnson*, 375 F.Supp. 872, 876 (W.D.Mich.1974) (granting two state prisoners' petitions for writs of habeas corpus where prisoners had had only one defense—alibi; the missing alibi witnesses were known to be several hours away, in a different state; defense counsel requested a one day continuance to secure their attendance; a clear and explicit subpoena had been issued; and the prosecution asserted no special interests that would counsel against a short delay). Accordingly, the writ should issue based on violation of appellant's sixth and fourteenth amendment rights.

## II.

Appellant also claims that the trial judge violated his fourteenth amendment due process rights by failing to give requested instructions to the jury on two lesser included offenses. We conclude that we need not decide whether, at the time of appellant's trial, he was entitled to such instructions. Recent decisions by the Supreme Court of Kentucky have effectively guaranteed that if appellant is retried, he will be entitled to more favorable instructions than those he shought at the first trial.

At the close of the trial, the judge denied appellant's request that the jury be instructed on the elements of the offenses of second degree manslaughter, K.R.S. 507.-040,[9] and reckless homicide, K.R.S. 507.-050.[10] Instead, the trial judge instructed the jury on the elements of the offenses of murder, K.R.S. 507.020,[11] and first degree manslaughter, K.R.S. 507.030,[12] the latter offense being the one of which appellant was convicted.

Appellant's allegation of error in failing to instruct the jury on the offenses of second degree manslaughter and reckless homicide is based on a rule announced in *Beck v. Alabama*, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980), and clarified in *Hopper v. Evans*, 456 U.S. 605, 610–14, 102 S.Ct. 2049, 2052–54, 72 L.Ed.2d 367 (1982). In *Beck*, the Court held that a defendant charged with a capital offense is exposed to an intolerable risk of an unwarranted conviction "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense" and the court fails to give

9. "A person is guilty of manslaughter in the second degree when ... he wantonly causes the death of another person." *Id.*

10. "A person is guilty of reckless homicide when, with recklessness he causes the death of another person." *Id.*

11. The instruction required the jury to find appellant guilty of murder if they believed from the evidence, beyond a reasonable doubt: (a) that appellant killed Westerfield by shooting her with a pistol; (b) that he caused her death intentionally, and not while acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be; and (c) that he was not privileged to act in self-protection.

12. The instruction read:
 FIRST–DEGREE MANSLAUGHTER
 If you do not find the defendant, John R. Bennett, guilty under Instruction IV [murder],

you will find him guilty under this Instruction if and only if you believe from the evidence, beyond a reasonable doubt, all of the following:
 a) That in this County, on or about March 17, 1982, he killed Vicki Westerfield by shooting her with a pistol; and
 b) That in so doing:
 1) He intended to cause her death while acting under the influence of extreme emotional disturbance, for which there was a reasonable justification or excuse under the circumstances as he believed them to be; or
 2) He was acting with the intention of causing serious physical injury to her, and
 c) That in so doing he was not privileged to act in self protection.
 If you find the defendant guilty under this instruction, you will fix his punishment at confinement in the penitentiary for not less than 10 years nor more than 20 years, in your discretion.

the jury the option of convicting on a lesser included offense. *Beck*, 447 U.S. at 637, 100 S.Ct. at 2389.[13] In *Hopper*, the Court noted that a jury must be permitted to consider a verdict of guilt of a noncapital offense " 'in every case' in which 'the evidence would have supported such a verdict.' " *Hopper*, 456 U.S. at 610, 102 S.Ct. at 2052 (quoting *Beck*). The issue in *Hopper*, whether the evidence would have supported a verdict of guilt of a lesser offense, is the same issue appellee raises with respect to appellant's due process claim.

The Supreme Court of Kentucky upheld the trial court's refusal to instruct the jury on second degree manslaughter and reckless homicide "because no evidence was offered that his actions were not intentional." *Bennett*, slip. op. at 3. Appellant does not deny that the evidence clearly and exclusively pointed to an intent to kill or an intent to cause serious physical injury; appellant's theory was that he meant to protect himself, which, under the circumstances, required him to incapacitate Westerfield. Instead, appellant argues that under then-existing Kentucky law, if he intended to kill Westerfield because he believed such action was necessary to protect himself, and the jury finds that he was wanton or reckless in that belief, the jury should find him guilty of second degree manslaughter (if the belief was wanton) or reckless homicide (if the belief was reckless).

Were this allegation of error the only basis for appellant's petition, we would face a rather complicated task. A due process clause claim that one is entitled to instructions on a lesser included offense can be resolved only by determining what the elements of those offenses are. Hence, the reviewing court must look first to the state's law. Unfortunately, the relevant law in Kentucky was unsettled and in the process of incremental change when appellant was tried. Fortunately, though, the law seems to have settled at a point favorable to appellant should he be tried again.

As we noted above, the critical question raised by appellant's claim is whether he is entitled to an instruction that if the jury finds appellant did not act with a reasonable belief in the need to protect himself, it should convict him of something less serious than murder or first degree manslaughter. In 1980, the Supreme Court of Kentucky held that where a jury could find that the defendant was wanton or reckless in his belief in the need to defend himself (*e.g.*, he was reckless in his belief that the victim was about to shoot him), the defendant was entitled to instructions on second degree manslaughter and reckless homicide. *See Blake v. Commonwealth*, 607 S.W.2d 422 (1980). The court reached its result by relying, in part, on a section of the criminal statutes, K.R.S. 503.120(1), that states when a self-protection defense is available. Appellant relies on *Blake* for his due process claim. Two years later, the Supreme Court of Kentucky decided *Caldwell v. Commonwealth*, 634 S.W.2d 405 (1982). The issue again was whether the accused, who relied on a self-protection defense, was entitled to second degree manslaughter and reckless homicide instructions based on the possibility that the jury would conclude the accused was reckless or wanton in his belief in the need to defend himself. The court held that such instructions were not permitted because all of the accused's evidence pointed to the fact that the victim had a gun which he brandished and with which he threatened the accused. Thus, the court concluded, the evidence showed that if the accused believed in the need to defend himself, that belief could only have been reasonable; it could not have been wanton or reckless.

 In a decision following the Supreme Court of Kentucky's affirmance of appellant's conviction, that court re-thought *Blake* and decided to overrule it. *See Baker v. Commonwealth*, 677 S.W.2d 876 (1984). The court chose to approach the question of when one is entitled to instruc-

---

**13.** The Court expressly reserved the question whether the due process clause would require the giving of such instructions in a noncapital case. *Id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14.

This Court, however, has held that the principle is not limited to capital cases. *See Ferraza v. Mintzes*, 735 F.2d 967, 968 (6th Cir.1984).

tions on second degree manslaughter and reckless homicide by looking at what the elements of those offenses are. The court concluded that because the "wantonly" and "recklessly" elements of those offenses are addressed to one's intended result rather than one's belief in the need to bring about that result, a reckless or wanton belief in the need to defend one's self does not entitle one to instructions on those offenses.[14] The important part of the court's opinion for our purposes is the court's opening observation that when a jury finds that an accused had an unreasonable belief in the need to defend himself, the jury should find him innocent.

> Under [K.R.S. 503.050], the use of physical force for self protection against death, serious physical injury, kidnapping, or sexual intercourse compelled by force or threat is justifiable if it is believed that such force is necessary, and this is true regardless of whether the belief as to necessity is reasonable or unreasonable.

*Id.*, 677 S.W.2d at 878. The court went on to note that K.R.S. 503.120—the basis for the court's holding in *Blake*—merely states that someone acting with an unreasonable belief (but a belief nonetheless) in the need to protect himself should not be convicted of an intentional crime, but may be convicted of a crime where the mental state for culpability is wantonness or recklessness.[15] In the instant case, appellant has been charged with, and convicted for, committing an *intentional* crime. Thus, the import of the court's decision for our purposes is that if appellant is retried for an intentional offense, and there is evidence that he believed, reasonably or unreasonably, in the need to defend himself, he will be entitled to an instruction that if the jury finds he had such a belief they should find him innocent. Because such an instruction would obviously be more favorable than one directing a jury that makes such a finding to convict him of second degree manslaughter or reckless homicide, we need not consider whether he was originally entitled to those lesser-included-offense instructions.

The judgment of the District Court is reversed and the action is remanded to the District Court with instructions to conditionally grant appellant's petition for a writ of habeas corpus.

---

**14.** The court specifically examined the culpability element of reckless homicide, and compared it to the evidence in the case before it.

> [P]ursuant to the definition of recklessness as it is defined in K.R.S. 501.020 and made applicable to the criminal code, recklessness as it is used in K.R.S. 507.050 [the reckless homicide provision] refers to the failure of the actor to perceive the risk incident to his conduct, not the fact that his conduct may be considered negligent or reckless in the ordinary meaning of those words.
> ... The reckless homicide statute deals with both conduct and result. It deals with conduct which creates an unjustifiable risk of a particular result, and the punishment imposed is less than that imposed for intentional or wanton conduct because the perpetrator did not consciously intend the result, but nevertheless he grossly deviated from the standard of a reasonable person in failing to perceive the risk.
> In this case the appellant does not even contend that he failed to perceive the risk that firing six shots into the body of the deceased

would cause her death. Since the risk that the result would occur is so obvious and since the appellant does not contend that he failed to perceive the risk, there was no basis for an instruction on reckless homicide, and the failure to give such an instruction was not erroneous. *Blake v. Commonwealth, supra,* insofar as it holds otherwise, is overruled.
*Baker,* 677 S.W.2d at 879.

**15.** K.R.S. 503.120(1) states:

> When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 [including self-protection] but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.