880 F.2d 415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrick VILARDO, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 88-5972.
 United States Court of Appeals, Sixth Circuit.
 July 31, 1989.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges and ODELL HORTON, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant appeals his jury conviction for conspiracy to commit fraud, arson, mail fraud and wire fraud. For the following reasons, we reverse and remand for a new trial.
 
 I.
 
 2
 On November 26, 1986, defendant-appellant, Patrick Vilardo, and two co-defendants (Harold Thornberry and Robert D. Overbeck) were indicted by a federal grand jury in the Eastern District of Kentucky. Vilardo was indicted on nine counts of an indictment alleging violations of 18 U.S.C. Secs. 371 (conspiracy), 844 (arson), 1341 (mail fraud) and 1343 (wire fraud). Vilardo was the co-owner of a bar called the Top Shelf Lounge. He was accused of conspiring with Thornberry (the owner of the property on which the Lounge was located), Carlos Fornash (the co-owner of the Lounge) and Overbeck (an insurance agent) to insure the Lounge, burn it and collect the insurance proceeds. In separate but related proceedings, Vilardo and Fornash are also accused of illegally obtaining a Kentucky liquor license for the Lounge by filing the license in the name of Denver Stapleton, an acquaintance of theirs who had no ownership interest in the Lounge.
 
 
 3
 Fornash and his ex-wife, Trina Pompilio, admitted that they committed the actual arson. Pompilio ultimately informed the Kentucky State Police about her involvement in the arson, allegedly because Thornberry and Vilardo had threatened her life. As a result of Pompilio's cooperation, the police agreed not to prosecute her. Fornash entered a guilty plea to conspiracy to commit arson and mail fraud and testified against Vilardo, Thornberry and Overbeck. Because Thornberry had other charges pending against him, he entered an Alford guilty plea to one count of the indictment and testified against Vilardo and Overbeck.
 
 
 4
 Vilardo and Overbeck's trial began on June 6, 1988. In addition to the testimony of Fornash, Pompilio, Thornberry and Stapleton, the Government provided testimony from employees of the company that insured the Lounge. These employees provided little direct evidence against Vilardo. At the end of the first day of trial, the court asked the Government how long the remainder of its case-in-chief would take. The Government stated that it would call seven more witnesses and that it would need the entire second day of trial. On the second day of trial, however, the Government completed its case at approximately 3:30 p.m., in part because the court sustained defense counsel's objection to certain evidence. After the Government rested its case, the following conversation took place between the court and defense counsel:
 
 
 5
 The Court: [A]re we ready to come with your case?
 
 Mr. Hellings
 
 6
 [Vilardo's attorney]: Judge, we don't have any witnesses. I was here ready for tomorrow morning.
 
 
 7
 The Court: What?
 
 
 8
 Mr. Hellings: I'm ready for tomorrow morning. I was told that the case yesterday--you asked the Court if it would take a full day and you told the United States--
 
 
 9
 The Court: No, I didn't tell you not to bring your witnesses here.
 
 
 10
 Mr. Hellings: Well, no you didn't tell--you didn't--I will say that you did not specifically tell me to bring my witnesses.
 
 
 11
 The Court: Exactly.
 
 
 12
 Mr. Hellings: But you did say in--about how long is it going to take--
 
 
 13
 The Court: Well, if you don't have any of those witnesses here, why, you could have told by noon that we were going to get done here.
 
 
 14
 Mr. Hellings: Well, Judge, I had no idea what they were doing here.
 
 
 15
 The Court: I'm sorry, you're going to have to put some witnesses on or rest one.
 
 
 16
 Mr. Hellings: Well, I believe he's got some witnesses here, don't you Ed?
 
 Mr. Drennen:
 
 17
 [Overbeck's Attorney] Judge, all my witnesses are subpoenaed for tommorrow morning.
 
 
 18
 The Court: Well, that's a grievous error.
 
 
 19
 Mr. Hellings: You're what?
 
 
 20
 The Court: You should have subpoenaed them for Monday.
 
 
 21
 Mr. Hellings: Well, that's fine and good, Judge, but I'm just suggesting to the Court we had two, perhaps--
 
 
 22
 The Court: I mean I'm not going to sit up here at three o'clock--
 
 
 23
 Mr. Hellings: --three witnesses that we could--obviously that we could have if we had known that it was--it would take us probably 20 minutes tomorrow to put them on.
 
 
 24
 The Court: I can't imagine you putting them on in twenty minutes and getting them off. Well you'd probably get them on here in about half a second, but by the time they got off it would be half a day. I'm sorry about that, but I--where are the witnesses.
 
 
 25
 Mr. Hellings: Covington. One of them is a deputy jailer by the name of Kerns who will testify as follows: His testimony will be that Trina--
 
 
 26
 The Court (Interrupting): I wish he was here, but I'm going on with the trial, and I'm asking you to put on your case. Bring the jury back.
 
 
 27
 J.App. at 62-64.
 
 
 28
 After the court granted a recess for defense counsel, both defendants rested their case and informed the court, by way of proffer, what the defense witnesses' testimony would have been. Defense counsel stated that one of the witnesses was Timothy Wainscott, the attorney who arranged for Vilardo and Fornash to obtain a liquor license for the Lounge in Stapleton's name. According to Vilardo's attorney, Wainscott would testify that Vilardo's business dealings with Stapleton and Fornash were not intended to be illegal. In addition, defense counsel intended to call Richard Kerns, who was once married to Pompilio, and who allegedly told her that Vilardo had threatened her. According to Vilardo's attorney, Kerns would deny making any such statement to Pompilio. Likewise, defense counsel stated that Jack Kerns would testify that he never told his son, Richard, that Vilardo had threatened Pompilio.
 
 
 29
 The jury ultimately found Vilardo guilty on all nine counts of the indictment. During Vilardo's sentencing hearing, his attorney again raised the issue of the denial of the continuance. Counsel stated that another witness, Billy Manning, could have been called as a character witness for Vilardo. While conceding that Manning was in the courtroom at the close of the Government's case, the attorney stated that he decided not to have Manning testify for tactical reasons. Likewise, although Fornash was a potential defense witness, Vilardo's attorney decided not to not call him, also for tactical reasons. At Vilardo's sentencing hearing, the following colloquy took place between the district judge and Vilardo's counsel:
 
 
 30
 Judge Hull: Do Judges wait on witnesses in Kentucky? Witnesses wait on judges in Tennessee.
 
 
 31
 Mr. Hellings: Well, it doesn't work that way here in this District. We are--We can--
 
 
 32
 Judge Hull: Well, I'll tell you what, I think its awful nice of them.
 
 
 33
 J.App. at 276. The district court sentenced Vilardo to five years on all counts except count four. Those sentences were to run consecutively. Vilardo received a five year suspended sentence on count four.
 
 II.
 
 34
 Vilardo claims that the district court abused its discretion in denying his request for a continuance from 3:30 p.m. until the following morning at 9:00 a.m. Vilardo concedes that he should have had his witnesses present throughout the trial and admits that he chose not to have Fornash or Manning testify for tactical reasons. Vilardo contends, however, that he justifiably relied on the Government's statement that it would need an additional day to finish its case-in-chief. Since his witnesses were subpoenaed for the following morning, Vilardo argues that the trial court's actions deprived him of due process of law.
 
 
 35
 The Supreme Court has stated that "broad discretion must be granted trial courts on matters of continuances" and that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris v. Slappy, 461 US 1, 11-12 (1963) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). In examining the constitutional limits of a district court's discretion in this area, we stated in Bennett v. Scroggy, 793 F.2d 772 (6th Cir.1986), that district courts should consider the following factors when considering a motion for a continuance: the diligence of the defense in interviewing witnesses and procuring their presence; the likelihood of procuring their testimony within a reasonable time; the specificity with which the attorney can describe their testimony; the degree to which the testimony would help the defense; and the cumulative nature of the testimony. Id. at 774 (citing Hicks v. Wainwright, 633 F.2d 1146, 1149 (5th Cir.1981)). While we observed that the "matter of continuance is traditionally within the discretion of the trial judge," we noted that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." Id. at 774, n. 5. Thus, while there "are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," we observed that the "answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id.
 
 
 36
 We agree that, as a general rule, witnesses should wait for judges rather than judges waiting for witnesses. The magnitude of cases that federal district court judges are expected to manage dictates that parties and their witnesses be prepared to appear in court when scheduled. However, while Vilardo should have been prepared to present his case at all times, given the Government's clear statement that it would need the entire second day of trial to present its case, we find that it was not unreasonable for Vilardo to subpoena his witnesses for the third day of trial. Moreover, because Vilardo's attorney stated that he could procure the witnesses' testimony within a reasonable time (i.e., overnight), because he attempted to describe their testimony with specificity, because the testimony may have helped Vilardo's defense by discrediting Pompilio, and because the testimony would not have been overly cumulative, we hold that, pursuant to Bennett, the district court should have granted Vilardo's motion for a continuance. While we recognize that district courts are often presented with unreasonable requests for delay, in reviewing the circumstances present in this case, we find that Vilardo's request was entirely reasonable. Because this trial was already in progress when it became apparent that a continuance might be necessary, the denial of the motion rendered Vilardo's right to defend an empty formality. Finally, because most of the evidence against Vilardo was circumstantial and because his accusers were his alleged co-conspirators, we cannot say that the testimony of Vilardo's witnesses would not have changed the result in this case. Accordingly, we hold that the district court abused its discretion in not granting Vilardo's motion for a continuance, and further hold that Vilardo is entitled to a new trial.
 
 III.
 
 37
 Since we find that Vilardo is entitled to a new trial because of the district court's refusal to grant his request for a continuance, we need not address whether his conviction is supported by substantial evidence. For the reasons discussed above, we hereby REVERSE Vilardo's conviction and REMAND for a new trial.
 
 
 
 *
 Honorable Odell Horton, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation