[Cite as *State v. Chandler*, 2017-Ohio-9279.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |     | JUDGES:                      |
|--------------------------|-----|------------------------------|
| STATE OF OHIO            | :   | Hon. W. Scott Gwin, P.J.     |
|                          | :   | Hon. William B. Hoffman, J.  |
| Plaintiff-Appellee       | :   | Hon. Earle E. Wise, J.       |
|                          | :   |                              |
| -vs-                     | :   |                              |
|                          | :   | Case No. 2017CA00053         |
| KENYAN LAMAR CHANDLER    | :   |                              |
|                          | :   |                              |
| Defendant-Appellant      | :   | O P I N I O N                |

CHARACTER OF PROCEEDING: Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2016CR2058A

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: December 26, 2017

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN FERRERO                              AARON KOVALCHIK
STARK COUNTY PROSECUTOR                   116 CLEVELAND AVENUE N.W.
BY: KRISTINE W. BEARD                     SUITE 808
110 CENTRAL PLAZA SOUTH                   CANTON, OH 44702
CANTON, OH  44702

*Gwin, P.J.*

{¶1} Appellant Kenyan Chandler ["Chandler"] appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} Chandler was indicted on one count of Aggravated Robbery, RC 2911.01(A) with a firearm specification, RC 2941.145. The following evidence was presented during Chandler's jury trial.

{¶3} Brandie McGowan testified that she was working at the Gameroom, a skilled game center on October 14, 2016 when two men came in the front door with a gun. McGowan testified that one of the men made the people at the Gameroom stay where they were while the other man took her into the office where he shattered the register and took the money. McGowan then testified that the man made her open the safe and he took all the money from the safe. McGowan also testified that a woman who had come into the Gameroom earlier stood out in her mind because the woman had told her she needed help playing the games and the woman received multiple phone calls. McGowan further testified that the Gameroom had a video surveillance system and the video showed that the men who had come into the Gameroom were wearing gloves and their faces were covered. Upon cross-examination, McGowan testified that she did not recognize Chandler and she did not recall seeing him on October 14, 2016.

{¶4} Officer Chad Kanouff of the Jackson Police Department testified that he was dispatched to the Gameroom on October 14, 2016 in regards to a robbery. Officer Kanouff testified that he met Brandie McGowan and she gave him the name of Shania Summerville as someone he should talk to about his investigation. Officer Kanouff then

made contact with Summerville. Summerville denied both verbally and in a written statement that she was involved in the crime or that she was familiar with the robbers. Officer Kanouff asked if he could see the call history on her cell phone. Summerville agreed and Officer Kanouff documented the numbers on his police report. One of the recent numbers was 330-356-xxxx[1] a call Summerville received at approximate 10:08 P.M. that evening. Summerville advised the officers that the cell phone number belonged to her boyfriend, Marshawn Oliver. Officer Kanouff did not process the scene for DNA or fingerprints because the men were wearing masks and gloves and no scientific evidence was likely to be found at the scene.

{¶5} The next day, Detective Joshua Escola began his investigation. Detective Escola retrieved and reviewed the videos from the Gameroom. Escola observed that there was a significant height and weight difference between the two male perpetrators. Detective Escola also observed that they were wearing dark clothing, masks and gloves, which indicated that they were experienced and made it hard to collect any scientific evidence.

{¶6} As part of the investigation, Detective Escola typed the cell phone number from Summerville's cell phone call history into the Facebook site. Escola found a Facebook account registered to Chandler with the same cell phone number. Chandler's Facebook account also showed that Summerville was listed as being one of his friends. Detective Escola also discovered that Marshawn Oliver is actually Summerville's family member and not her boyfriend. As a result, Detective Escola attempted to contact Summerville. Initially Detective Escola was unable to contact Summerville because she

---

[1] The number has been redacted to avoid privacy concerns in the event the number has been re-assigned since the time of trial.

had given the officers a fake telephone number. Detective Escola then contacted Amber Walters[2]. Walters advised Escola that she knew both Summerville and Chandler. She provided Escola with Summerville's number and verified that 330-356-xxxx was the cell phone number for Chandler. At trial, Walters testified that on October 18, 2017, four days after the robbery, Chandler called Walters and told her the cell phone number was no longer good. Walters also testified that Chandler was on a GPS monitor on the night of the robbery and that the monitor had not been charged. Therefore, Chandler's whereabouts were unsupervised when the robbery occurred.

{¶7} Escola contacted Summerville who agreed to come to the Jackson Police Department for a second interview. Initially, Summerville denied knowing anything about the robbery. However, after being confronted with the cell phone and Facebook information, Summerville admitted that she was the lookout for the two men at the Gameroom the night of the robbery. Summerville also advised Detective Escola that the man holding the gun in the video was her boyfriend, Kenyan Chandler. Summerville also identified Taronn Jeffries as the other male accomplice. Detective Escola further testified that Jeffries and Chandler's height and weight were consistent with the men in the Gameroom video. Detective Escola placed Summerville under arrest for complicity to commit aggravated robbery.

{¶8} Summerville was subsequently indicted for a felony five theft, in exchange for her truthful testimony against Chandler. At trial, Summerville testified that in October of 2016 she and her four-year-old son were living with Chandler. She stated that on October 14, 2016, Chandler asked her to scope out the Gameroom. She stated that when

---

[2] Ms. Walters was identified at trial as "Officer" and as employed in a "law enforcement capacity." 1T. at 193-194.

she arrived at the Gameroom the owner walked her around and taught her how to play the games. While she was there she received two calls from Chandler asking her who was there including how many men and how many women were present.

{¶9} At approximately 10:15, she saw Chandler and Jeffries come through the front door of the Gameroom. She admitted that she saw Jeffries take the owner upstairs, while Chandler stayed at the front door holding the patrons at gunpoint. After the men left, she stayed seated until the police arrived. She testified that she told the officers that she did not know anything about the robbery, and gave them a fake name and number. She testified she did agree to let the officers look at the call history on her phone. She then left the Gameroom, picked up her son and went home.

{¶10} Summerville testified that when Chandlers and Jeffries got to the house they were wearing different clothes. Taronn asked her what she told the police. A couple of days later she got a call from Detective Escola and agreed to meet with him at the Jackson Police Department. Summerville testified that initially she did not tell the truth but later admitted knowing about the robbery and gave Escola the names of the other two men. She stated that because of her confession she was arrested and charged with complicity to commit aggravated robbery.

{¶11} At the time of trial, Summerville testified that she originally testified to the Grand Jury that she did not know that Chandler and Jeffries were involved with the robbery at the Gameroom until after they got home. She also admitted she told the Grand Jury that she could not recognize them by their voices. Summerville further stated that she gave the police the wrong phone number in order to hide from them.

{¶12} After the presentation of evidence, Chandler was found guilty as charged in the indictment. Chandler was sentenced to serve a 6-year prison sentence for the aggravated robbery and a 3-year mandatory consecutive sentence for the firearm specification.

*Assignments of Error*

{¶13} Chandler raises four assignments of error,

{¶14} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT APPELLANT'S MOTION FOR A CONTINUANCE.

{¶15} "II. THE TRIAL COURT ERRED WHEN IT ALLOWED TESTIMONY THAT WAS MORE PREJUDICIAL THAN PROBATIVE.

{¶16} "III. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶17} "IV. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, BECAUSE I-HS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

I.

{¶18} In the first assignment of error, Chandler argues that the trial court abused its discretion when the court denied counsel's request for a continuance to recall Detective Escola as a State's witness who had not been subpoenaed by the defense.

{¶19} At trial, the state rested after the testimony of Detective Escola had concluded. (1T. at 223). The court subsequently adjourned for the day, after denying

Chandler's Criminal Rule 29 motion for acquittal. (1T. at 227). The following morning, defense counsel informed the court that Chandler wished to have Detective Escola recalled; however, the defense did not subpoena the detective. Therefore, the defense requested a continuance in order to procure Detective Escola. When asked by the trial judge the reason for the request, defense counsel replied, "To cross-examine him again about the phone records." (2T. at 232). The trial court denied the motion.

**STANDARD FOR APPELLATE REVIEW.**

{¶20} Ordinarily a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921(1964). If, however, the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of due process. *Bennett v. Scroggy*, 793 F.2d 772 (6th Cir 1986). A defendant has an absolute right to prepare an adequate defense under the Sixth Amendment of the United States Constitution and a right to due process under the Fifth and Fourteenth Amendments. *United States v. Crossley*, 224 F.3d 847, 854(6th Cir. 2000). The United States Supreme Court has recognized that the right to offer the testimony of witnesses and compel their attendance is constitutionally protected. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019(1967). The Ohio Supreme Court recognized that the right to present a witness to establish a defense is a fundamental element of due process of law. *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 4-5, 511 N.E.2d 1138(1987). A trial court's failure to grant a continuance to enable a defendant to exercise his constitutionally protected right to offer the testimony of witnesses and compel their attendance may, in some circumstances, constitute a denial

of due process. *Mackey v. Dutton*, 217 F.3d 399, 408(6th Cir 2000); *Bennett v. Scroggy*, supra, 793 F.2d at 774. See also, *State v. Wheat*, 5th Dist. Licking No. 2003-CA-00057, 2004-Ohio-2088 at ¶ 16.

**{¶21}** Among the factors to be considered by the court in determining whether the continuance was properly denied are: (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel and court, (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived", (5) whether the defendant contributed to the circumstances giving rise to the request, (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case, and (7) the complexity of the case. *Powell v. Collins*, 332 F.3d 376, 396(6th Cir 2003); *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078(1981), 1080; *State v. Wheat*, *supra* at ¶ 17.

**{¶22}** On a petition for habeas corpus relief, the federal courts have enumerated a slightly different set of factors that a reviewing court should consider in determining whether an accused was deprived of his rights to compulsory process and due process of law by denial of a motion for continuance: "[1] the diligence of the defense in interviewing witnesses and procuring their testimony within a reasonable time, [2] the specificity with which the defense is able to describe their expected knowledge or testimony, [3] the degree to which such testimony is expected to be favorable to the accused and [4] the unique or cumulative nature of the testimony." *Hicks v. Wainwright*, 633 F.2d 1146, 1149(5th Cir 1981) *(quoting United States v. Uptain*, 531 F.2d 1281, 1287(5th Cir 1976); *see, also, Bennett v. Scroggy*, *supra*, 793 F.2d at 774; *State v. Wheat*, *supra* at ¶ 18.

***No evidence Chandler was prejudiced by the denial.***

{¶23} The record shows that on the day of trial, prior to the presentation of evidence, the state provided the defense with copies of cell phone records. (1T. at 128). The defense moved the court for a continuance of the trial in order to have an opportunity to review the records to see if there was anything of use in the records or if the defense needed to raise an objection. The state explained why the records were being provided at the time of trial. According to the state the records had been subpoenaed, defense was aware of the subpoena and the records had just been received by the state that day.

{¶24} The trial court ruled that the cell phone records were not admissible in the state's case due to the lateness of the disclosure. However, the trial court gave the defense time to determine if the records contained any exculpatory information. (1T. at 130).

{¶25} The matter proceeded to trial. Detective Escola testified. No cell phone records were discussed or introduced during his direct testimony. On cross-examination, the defense questioned the officer about the cell phone records and how cell phone calls are triangulated. The officer testified that triangulation is a complicated process wherein cell phone calls are picked up by nearby cell phone towers and then are evaluated for overlap. The overlapping of signals from several cell phone towers helps law enforcement determine the location of a particular cell phone at the time the call was made. Detective Escola testified that in this case, the cell phone signal from Chandler's phone was only picked up by one tower in Massillon, which is located at Beaumont Avenue NW. The tower is located five miles from the Gameroom. (1T. at 186-187). Detective Escola further testified that because the call was only picked up by one tower,

the cell phone information was not helpful in triangulating the exact location of Chandler's cell phone on the night in question. (1T. at 188). Detective Escola stated that he could only testify that the cell phone signal was received somewhere within eleven square miles of the tower. The eleven square mile area is broad and includes both the location of the Gameroom and Chandlers' residence, information that was not helpful to the investigation. (1T. at 188).

{¶26} In the case at bar, there is no proffer in the record that further examination regarding the cell phone records would provide any additional information in aid of the defense. There is no evidence that cross-examining Detective Escola again would have uncovered exculpatory evidence on Chandler's behalf. Chandler has failed to demonstrate how the failure to grant the continuance actually prejudiced his defense.

{¶27} After careful examination of the record, we find that the trial court did not abuse its discretion in denying Chandler's request for a continuance. The trial court had an interest in controlling its own docket and ensuring the prompt and efficient administration of justice. *See Unger*, 67 Ohio St.2d at 67, 423 N.E.2d 1078. The trial court clearly felt that competent counsel adequately represented Chandler and that there was no reason to delay the trial. As such, we find that the trial court did not abuse its discretion when it denied the motion to continue the trial and we find no violation of Chandler's due process rights.

{¶28} Chandler's first assignment of error is overruled.

II.

{¶29} In his second assignment of error, Chandler argues that the trial court abused its discretion by permitting the introduction of testimony that was more prejudicial

than probative. Specifically, Chandler argues that the trial court abused its discretion in permitting the testimony of Amber Walters. Walters testified that she worked in law enforcement, was familiar Chandler's cell phone number, and knew that Chandler was required to wear a GPS ankle bracelet. Chandler argues that the testimony improperly gave the jury the impression that he had a criminal history and/or was under supervision at the time of the offense.

**STANDARD FOR APPELLATE REVIEW.**

**{¶30}** Because no objection at trial was raised to the testimony now claimed to have been admitted as error, we review only for plain error.

**{¶31}** Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶32}** Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. The Ohio Supreme Court recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice— the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) Id. at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–

83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). *Accord, State v. Thomas,* ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

**{¶33}** If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; the Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *Accord, State v. Thomas,* ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

**{¶34}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). Evid.R. 402 states that all relevant evidence is admissible. "Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶35}** In *State v. Crotts,* the Ohio Supreme Court explained,

As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all

prejudicial evidence- -to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable.

"'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, *quoting Weissenberger's Ohio Evidence* (2000) 85–87, Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24.

**{¶36}** In the case at bar, Walters testified that she was employed by Stark County in a law enforcement capacity and that she was familiar with Chandler and Chandler's cell phone number. Walters identified Chandler's cell phone number as being 330-356-xxxx the same cell phone number that appeared on the Shania Summerville's cell phone on the night of the Gameroom robbery. Walters also testified that Chandler was required to wear a GPS monitor. Walters testified that upon reviewing the GPS records she discovered that the monitor was uncharged from approximately 10:18 P.M. on October 14, 2016 until 8:27 AM, October 15, 2016.

**{¶37}** In the case at bar, Chandler argued that there was not enough credible evidence to identify him as one of the robbers of the Gameroom. The state introduced the testimony of Walters to corroborate the testimony of Summerville, whom the defenses characterized as untrustworthy. While this information was prejudicial it was not unfairly prejudicial but rather relevant to whether Chandler was one of the masked individuals that robbed the game room. The evidence was not admitted for an improper purpose. Chandler's claim of unfair prejudice must therefore fail. There is little if any probability that the admission of Walters' testimony affected the outcome of the trial.

**{¶38}** Chandler's second assignment of error is overruled.

III.

**{¶39}** In his third assignment of error, Chandler argues that his conviction is against the manifest weight and sufficiency of the evidence. Specifically, Chandler argues that there was no physical or scientific evidence linking him to the crime and that the testimony of the accomplice Shania Summerville was not credible.

**STANDARD FOR APPELLATE REVIEW.**

**{¶40}** When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the

trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting 5 Ohio Jurisprudence 3d, Appellate Review,* Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶41} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional

case in which the evidence weighs heavily against the conviction." Id. *Accord, State Mast,* 5th Dist. Holmes No. 17CA11, 2017-Ohio-8388, ¶32-34.

**ISSUE FOR APPEAL.**

A. Whether the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Sufficiency of the Evidence.*

**{¶42}** There is no dispute in the case at bar that robbery with a firearm as alleged in the indictment had in fact occurred. Chandler's main argument is that there was insufficient evidence to identify him as the perpetrator of those crimes.

**{¶43}** Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. This truism is reflected in the state's constitutional burden to prove the guilt of "the accused" beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Like any fact, the state can prove the identity of the accused by "circumstantial or direct" evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991). The relevant question in a sufficiency-of-the-evidence review is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶44}** In the case at bar, Summerville testified that Chandler was one of the two men who robbed the Gameroom. Her testimony was corroborated by cell phone records indicating that Chandler called Summerville two times immediately preceding the robbery

on October 14, 2016.  Walters corroborated the cell phone number.  At trial, Walters testified that on October 18, 2017, four days after the robbery, Chandler called Walters and told her the cell phone number was no longer good.  Walters also testified that Chandler was on a GPS monitor on the night of the robbery and that the monitor had not been charged and therefore Chandler's whereabouts were unsupervised when the robbery occurred.

{¶45}  Summerville testified and was cross-examined at trial.  The jury heard that she had lied during her interviews with the police, lied during her testimony to the Grand Jury and was given a favorable plea deal in exchange for her testimony.

{¶46}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Chandler was guilty of Aggravated Robbery with a firearm specification. We hold, therefore, that the state met its burden of production regarding Aggravated Robbery with a firearm specification and, accordingly, there was sufficient evidence to support Chandler's conviction.

*Manifest weight of the Evidence.*

{¶47}  The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012–Ohio–2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting 5 Ohio Jurisprudence 3d, Appellate Review*, Section 603, at 191–192 (1978).  Furthermore, it is well established that the trial court is

in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶48} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008–Ohio–6635, ¶ 31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶49} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889,

*citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶50}** In the case at bar, the jury heard the witnesses, viewed the evidence and heard Chandler's arguments concerning the lack of physical evidence and Summerville's lack of credibility.

**{¶51}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost their way nor created a miscarriage of justice in convicting Chandler of the charges.

**{¶52}** Based upon the foregoing and the entire record in this matter, we find Chandler's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Chandler's guilt.

**{¶53}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Chandler was convicted.

**{¶54}** Chandler's third assignment of error is overruled.

IV.

**{¶55}** In his fourth assignment of error, Chandler argues that his counsel was ineffective for failing to make a motion in limine and/or object to the introduction of the testimony of Amber Walters and failing to request a mistrial.

**STANDARD FOR APPELLATE REVIEW.**

**{¶56}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v, Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶57}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley.* *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶58}** The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct.

2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 562 U.S. 86, 104-105, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

{¶59} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

**ISSUES FOR APPEAL.**

1. Whether Chandler was prejudiced by counsel's failure to object or file a motion in limine concerning the testimony of Amber Walter.

{¶60} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988) *Accord, State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway,* 38 Ohio St.3d at 244, 527 N.E.2d 831.

{¶61} We have found in our disposition of Chandler's second assignment of error that Walters' testimony concerning Chandler's cellular phone number and his wearing a GPS monitor during the time of the robbery was properly introduced during Chandler's trial.

{¶62} Accordingly, counsel was not ineffective in failing to object or move to exclude this testimony.

2. Whether Chandler was prejudiced by counsel's Failure to move for a mistrial when the state referred to Chandler wearing a GPS monitor at the time of the robbery during the state's closing argument.

**{¶63}** In the rebuttal closing argument, the state asked the jury to examine the video of the crime scene and notice that Chandler had a bulge near the ankle on his right leg, presumably inferring that he was wearing a GPS. The defense objected to the state's argument and the court sustained the objection. (2T. at 251). The trial court instructed the jury,

> Disregard the comment, folks. There is no evidence of it. It was never brought up during the testimony so the objection is sustained.

2T. at 251. After the jury was excused to deliberate, defense counsel made a motion for a mistrial arguing as follows:

> [Defense]: Your honor, at this point I would ask the Court to declare a mistrial in this case due to [the state's] improper rebuttal argument in which he started to infer that one of—the picture that he was showing the jurors, that in that picture that there was a bulge located on the right leg of the individual in that picture, and that was indicative of a house arrest monitor bracelet.
>
> As I stated in my objection, there was no evidence presented to the Jury with regards to anyone being –anyone in the picture having a house arrest bracelet on.
>
> I believe that it was improper closing argument, and that it allowed the jury to infer that even though there was no evidence presented to the fact, that the person in the photo is actually Mr. Chandler; even though there is no evidence that a house arrest bracelet is evident in the photo. It also

prohibited me from commenting on the photo, given the fact that it was done

in rebuttal,

Again, Your Honor, on behalf of Mr. Chandler, I would ask the Court

to declare a mistrial.

**{¶64}** 2T. at 279-280. Accordingly, Chandler did make a motion for a mistrial. Chandler does not assign as error on appeal the trial court's denial of his motion.

**{¶65}** In *Bruton v. United States*, 391 U.S. 123, 135-136, 88 S.Ct. 1620, 20 L.Ed.2d 476(1968), the United States Supreme Court noted:

* * * Not every admission of inadmissible hearsay or other evidence

can be considered to be reversible error unavoidable through limiting

instructions; instances occur in almost every trial where inadmissible

evidence creeps in, usually inadvertently. "A defendant is entitled to a fair

trial but not a perfect one." * * * It is not unreasonable to conclude that in

many such cases the jury can and will follow the trial judge's instructions to

disregard such information."

**{¶66}** Further, "juries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, 562 N.E.2d 163, *approving and following State v. Fox*, 133 Ohio St. 154, 12 N.E.2d 413(1938); *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566(1929).

{¶67} Chandler has not argued or cited any evidence in the record that the jury failed to follow the trial court's instruction not to consider the evidence concerning the GPS monitor in the video surveillance evidence.

{¶68} Under these circumstances, there is nothing in the record to show that the jury would have found Chandler not guilty had the testimony and comments concerning the GPS ankle bracelet not been made on the part of the prosecution. In the circumstances of the case, no prejudice amounting to a denial of constitutional due process has been shown.

{¶69} Accordingly, Chandler has failed to demonstrate that he was prejudiced by his trial counsel's performance.

{¶70} Chandler's fourth Assignment of error is overruled.

{¶71} The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur


.