[Cite as *State v. Chandler*, 2018-Ohio-3560.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case Nos. 2018CA00046 |
| | : | 2018CA00056 |
| KENYAN CHANDLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of
Common Pleas, Case No.
2016CR2058A

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: September 4, 2018

APPEARANCES:

For Plaintiff-Appellee:

JOHN D. FERRERO, JR.
STARK CO. PROSECUTOR
KRISTINE W. BEARD
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant:

KENYAN CHANDLER, PRO SE
Inmate No. A693-139
Belmont Correctional Institution
P.O. Box 540
St. Clairsville, OH 43950

*Delaney, J.*

{¶1}   Appellant Kenyan Chandler appeals from the April 18, 2018 Judgment Entry of the Stark County Court of Common Pleas overruling his petition for post-conviction relief.[1]  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following facts are taken in part from our decision in *State v. Chandler*, 5th Dist. Stark No. 2017CA00053, 2017-Ohio-9279, appeal not allowed, 152 Ohio St.3d 1466, 2018-Ohio-1795, 97 N.E.3d 501.

{¶3}   Appellant was charged by indictment with one count of aggravated robbery pursuant to R.C. 2911.01(A), accompanied by a firearm specification pursuant to R.C. 2941.145. The following evidence is adduced from the record of appellant's jury trial.

*Evidence at trial: Investigation leads to appellant*

{¶4}   Brandie McGowan testified that she was working at the Gameroom, a skilled game center on October 14, 2016, when two men came in the front door with a gun. McGowan testified that one of the men made the people at the Gameroom stay where they were while the other man took her into the office where he shattered the register and took the money. McGowan then testified that the man made her open the safe and he took all the money from the safe. McGowan also testified that a woman who had come into the Gameroom earlier stood out in her mind because the woman had told her she needed help playing the games and the woman received multiple phone calls. McGowan further testified that the Gameroom had a video surveillance system and the

---

[1] This appeal is consolidated from two case numbers: 2018CA00046 and 2018CA00056.

video showed that the men who had come into the Gameroom were wearing gloves and their faces were covered. Upon cross-examination, McGowan testified that she did not recognize appellant and she did not recall seeing him on October 14, 2016.

{¶5}   Officer Chad Kanouff of the Jackson Police Department testified that he was dispatched to the Gameroom on October 14, 2016 in regards to a robbery. Officer Kanouff testified that he met Brandie McGowan and she gave him the name of Shania Summerville as someone he should talk to about his investigation. Officer Kanouff then made contact with Summerville. Summerville denied both verbally and in a written statement that she was involved in the crime or that she was familiar with the robbers. Officer Kanouff asked if he could see the call history on her cell phone. Summerville agreed and Officer Kanouff documented the numbers on his police report. One of the recent numbers was 330–356–xxxx1 a call Summerville received at approximate 10:08 P.M. that evening. Summerville advised the officers that the cell phone number belonged to her boyfriend, Marshawn Oliver. Officer Kanouff did not process the scene for DNA or fingerprints because the men were wearing masks and gloves and no scientific evidence was likely to be found at the scene.

{¶6}   The next day, Detective Joshua Escola began his investigation. Detective Escola retrieved and reviewed the videos from the Gameroom. Escola observed that there was a significant height and weight difference between the two male perpetrators. Detective Escola also observed that they were wearing dark clothing, masks and gloves, which indicated that they were experienced and made it hard to collect any scientific evidence.

{¶7} As part of the investigation, Detective Escola typed the cell phone number from Summerville's cell phone call history into the Facebook site. Escola found a Facebook account registered to appellant with the same cell phone number. Appellant's Facebook account also showed that Summerville was listed as being one of his friends. Detective Escola also discovered that Marshawn Oliver is actually Summerville's family member and not her boyfriend. As a result, Detective Escola attempted to contact Summerville. Initially Detective Escola was unable to contact Summerville because she had given the officers a fake telephone number. Detective Escola then contacted Amber Walters. Walters advised Escola that she knew both Summerville and Appellant. She provided Escola with Summerville's number and verified that 330–356–xxxx was the cell phone number for appellant. At trial, Walters testified that on October 18, 2017, four days after the robbery, appellant called Walters and told her the cell phone number was no longer good. Walters also testified that appellant was on a GPS monitor on the night of the robbery and that the monitor had not been charged. Therefore, appellant's whereabouts were unsupervised when the robbery occurred.

{¶8} Escola contacted Summerville who agreed to come to the Jackson Police Department for a second interview. Initially, Summerville denied knowing anything about the robbery. However, after being confronted with the cell phone and Facebook information, Summerville admitted that she was the lookout for the two men at the Gameroom the night of the robbery. Summerville also advised Detective Escola that the man holding the gun in the video was her boyfriend: appellant. Summerville also identified Taronn Jeffries as the other male accomplice. Detective Escola further testified that Jeffries and appellant's height and weight were consistent with the men in the Gameroom

video. Detective Escola placed Summerville under arrest for complicity to commit aggravated robbery.

{¶9}   Summerville was subsequently indicted for a felony five theft, in exchange for her testimony against appellant. At trial, Summerville testified that in October of 2016 she and her four-year-old son were living with appellant. She stated that on October 14, 2016, appellant asked her to scope out the Gameroom. She stated that when she arrived at the Gameroom the owner walked her around and taught her how to play the games. While she was there she received two calls from appellant asking her who was there including how many men and how many women were present.

{¶10} At approximately 10:15, she saw appellant and Jeffries come through the front door of the Gameroom. She admitted that she saw Jeffries take the owner upstairs, while appellant stayed at the front door holding the patrons at gunpoint. After the men left, she stayed seated until the police arrived. She testified that she told the officers that she did not know anything about the robbery, and gave them a fake name and number. She testified she did agree to let the officers look at the call history on her phone. She then left the Gameroom, picked up her son and went home.

{¶11} Summerville testified that when appellant and Jeffries got to the house they were wearing different clothes. Taronn asked her what she told the police. A couple of days later she got a call from Detective Escola and agreed to meet with him at the Jackson Police Department. Summerville testified that initially she did not tell the truth but later admitted knowing about the robbery and gave Escola the names of the other two men. She stated that because of her confession she was arrested and charged with complicity to commit aggravated robbery.

{¶12} At the time of trial, Summerville testified that she originally testified to the Grand Jury that she did not know that appellant and Jeffries were involved with the robbery at the Gameroom until after they got home. She also admitted she told the Grand Jury that she could not recognize them by their voices. Summerville further stated that she gave the police the wrong phone number in order to hide from them.

*Conviction and sentence*

{¶13} After the presentation of evidence, appellant was found guilty as charged in the indictment. Appellant was sentenced to serve a 6–year prison sentence for the aggravated robbery and a 3–year mandatory consecutive sentence for the firearm specification.

*Defense trial counsel files motion for new trial: Alibi witness*

{¶14} On February 13, 2017, via counsel, appellant filed a Motion for New Trial pursuant to Crim.R. 33(A)(6). Attached to the motion is affidavit signed by Charlotte Long stating that appellant was with her "continuously" at her house from 8:00 p.m. "until after 12:00 a.m." on the date of the robbery; she saw appellant use his cell phone during this time; and she left town before the trial and didn't realize she was needed as an alibi witness. Appellee responded with a motion in opposition. On May 18, 2017, the trial court overruled the motion for new trial because appellant had knowledge of the alibi at the time of trial and had knowledge of the witness "for an extended period of time," thus the purported alibi was not newly-discovered evidence.

*Direct appeal: convictions and sentence affirmed*

{¶15} Our decision affirming appellant's conviction and sentence was announced on December 26, 2017. *State v. Chandler*, 5th Dist. Stark No. 2017CA00053, 2017-Ohio-9279, appeal not allowed, 152 Ohio St.3d 1466, 2018-Ohio-1795, 97 N.E.3d 501.

*Petition for post-conviction relief: Same alibi witness*

{¶16} On March 20, 2018, appellant filed a petition for post-conviction relief asserting that trial counsel was ineffective in "failing to investigate Ms. Long." Appellant attached an affidavit from Long stating that he was at her house "overnight" on the night of the robbery and she tried to "reach out" to defense trial counsel several times. Appellant also attached an affidavit of his own to the motion, stating he told defense trial counsel about Long "to no avail" and that her testimony would have been exculpatory because appellee could not prove his whereabouts due to a malfunction of the ankle bracelet he was wearing at the time. Appellee filed a response in opposition. The trial court overruled appellant's petition by judgment entry dated April 4, 2018.

{¶17} Appellant now appeals from the trial court's entry of April 4, 2018.

{¶18} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I. A TRIAL COURT ABUSES ITS DISCRETION WHEN IT FAILS TO TAKE INTO CONSIDERATION THE AFFIDAVITS SET FORTH IN A PETITIONER'S PETITION FOR POST-CONVICTION RELIEF."

{¶20} "II. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE THE TESTIMONY OF CHARLOTTE LONG."

**ANALYSIS**

**I., II.**

{¶21} Appellant's two assignments of error are interrelated and will be considered together.  In his first assignment of error, appellant argues the trial court should have considered the affidavits of appellant and Long in ruling upon his petition for post-conviction relief.  In his second assignment of error, he argues he received ineffective assistance of defense trial counsel.  We disagree with both arguments.

{¶22} Appellant argues the trial court erred in denying his petition for post-conviction relief filed pursuant to R.C. 2953.21, which states in pertinent part:

> (A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

{¶23} A defendant may only seek post-conviction relief for violations of his State and Federal Constitutional rights. Both the United States Constitution and the Ohio Constitution provide for the right to assistance of counsel. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice

arises from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate, but for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶24} In order for an indigent petitioner to be entitled to an evidentiary hearing in a post-conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part *Strickland* test is to be applied. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Bradley*, supra, 42 Ohio St.3d 136.  The petitioner must therefore prove that: 1) counsel's performance fell below an objective standard of reasonable representation; and 2) there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id.*

{¶25} Furthermore, before a hearing is granted in proceedings for post-conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus; see, also *Strickland v. Washington*, supra, 466 U.S. at 687.

{¶26} We have previously held that our standard of review is de novo when reviewing a trial court's dismissal or denial of a petition for post-conviction relief without a hearing. *State v. Johnson*, 5th Dist. Guernsey No. 12 CA 19, 2013-Ohio-1398, ¶ 27, citing

*State v. Volgares,* 4th Dist. Lawrence No. 05CA28, 2006-Ohio-3788, ¶ 8, internal citation omitted.

{¶27} The Ohio Supreme Court has also recognized: "In post-conviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor,* 112 Ohio St.3d 377, 388, 860 N.E.2d 77, 2006–Ohio–6679, ¶ 51. A petition for post-conviction relief does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Wilhelm,* 5th Dist. Knox No. 05–CA–31, 2006–Ohio– 2450, ¶ 10, citing *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). As an appellate court reviewing a trial court's decision in regard to the "gatekeeping" function in this context, we apply an abuse-of-discretion standard. *See Gondor, supra,* at ¶ 52, citing *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999); accord *State v. Scott,* 5th Dist. Stark No.2006CA00090, 2006–Ohio–4694, ¶ 34. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶28} Both of appellant's arguments in the instant case are premised upon his assertion that he was denied effective assistance of trial counsel because defense trial counsel failed to "investigate" a potential alibi witness--Long, the subject of the motion for new trial. Appellant attached two affidavits to his post-conviction petition, his own and Long's.

{¶29} Long's states in pertinent part:

* * * *.  I am writing this letter on behalf of [appellant].  He's been a friend of mine for a few years.  I've tried to reach out to his lawyer since he was being held in the County.  On the day in question [appellant] was at my house on 632 Young St. S.E. Massillon, Ohio 44646, if you look at his phone record and location you can see that. He was at my house overnight.  If you have any questions feel free to call me at [redacted]. * * * *.

{¶30} Appellant's own affidavit states in pertinent part:

* * * *.  Before my trial, I informed [defense trial counsel] my alibi and the name and number of Ms. Charlotte Long who lives at 632 Young Street Massillon Ohio and informed him that I was with her all night. Ms. Long tried to contact [defense trial counsel] to no avail.  After my trial, which Ms. Long was unaware of, Ms. Long delivered an affidavit stating that I was with her throughout the night to [defense trial counsel].  [Defense trial counsel] failed to request a new trial due to new evidence.  * * * *.

{¶31} First, appellant's claim that defense trial counsel failed to file a motion for new trial based upon the Long alibi is belied by the record.  Counsel filed a motion for new trial, accompanied by an affidavit completed by "Charlotte Brown," but the trial court overruled the motion because Long's identity and purported alibi was not newly-discovered evidence.

{¶32} Appellant's own affidavit is self-serving in addition to being factually wrong. Affidavits which merely set forth legal conclusions or opinions without stating supporting

facts are insufficient. *Tolson v. Triangle Real Estate*, 10th Dist. Franklin No. 03AP–715, 2004–Ohio–2640, paragraph 12. Appellant's self-serving affidavit presumes prejudice and is insufficient to demonstrate he suffered any prejudice by his counsel's alleged failure.

{¶33} Long's affidavit avers she attempted to contact defense trial counsel about the possibility of testifying on behalf of appellant, and yet she simultaneously claims not to have known when the trial took place. She states counsel failed to contact her prior to the end of the trial and she could have helped appellant be found not guilty. The corroboration of this statement, apparently, is the fact that appellant's ankle bracelet could not reliably establish his whereabouts on the night of the robbery. We note, though, that evidence at trial directly contradicts appellant's purported alibi, and Long's statement, because Summerville identified appellant as one of the robbers on the videotape and other circumstantial evidence tied him to the robbery. The ineffectiveness of the ankle bracelet was not insurmountable for appellee at trial and appellee was able to place appellant at the scene of the robbery.

{¶34} Even if we accept Long's affidavit as true, therefore, appellant has not demonstrated how her testimony would have changed the outcome of the trial because it would have been her word against Summerville and the circumstantial evidence otherwise tying appellant to the robbery. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Appellant's assertion that Long's testimony would have resulted in his acquittal is purely speculative.

{¶35} We therefore find appellant has not demonstrated that but for the alleged failures of defense trial counsel, the outcome of the trial would have been different. See, *State v. Poulton*, 5th Dist. Muskingum No. CT2016-0023, 2017-Ohio-60, appeal not allowed, 149 Ohio St.3d 1421, 2017-Ohio-4038, 75 N.E.3d 238.

{¶36} We further find the trial court did not abuse its discretion in denying appellant's petition for post-conviction relief. As self-serving testimony, the trial court could give little or no weight to appellant's own affidavit. *State v. Church*, 5th Dist. Stark No. 2017CA00216, 2018-Ohio-368, ¶ 33, appeal not allowed, 152 Ohio St.3d 1483, 2018-Ohio-1990, 98 N.E.3d 296, citing *Calhoun*, supra, 86 Ohio St.3d at 281; *State v. Elmore*, 5th Dist. No. 2005–CA–32, 2005–Ohio–5740, ¶ 109. The judge who reviewed defendant's post-conviction relief petition was the same judge who presided at the jury trial and the sentencing hearing. Thus, the trial judge was familiar with the underlying proceedings and was in the best position to assess appellant's credibility in his affidavit, having presided over appellant's jury trial. *Calhoun*, supra, 86 Ohio St.3d 279, 286.

{¶37} Appellant vaguely contends that defense trial counsel did not properly "investigate" Long. In ruling upon the motion for new trial, the trial court found "* * * *[appellant] had knowledge of the alibi at the time of the trial and had had knowledge of the witness for an extended period of time." When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089 (1972); *State v. Wiley*, 10th Dist. Franklin No. 03AP-340, 2004-Ohio-1008, ¶ 21.

{¶38} The petition, the documentary evidence, the files, the transcript and the record do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief concerning counsel's effectiveness. See, *State v. Curtis*, 5th Dist. Muskingum No. CT2018-0014, 2018-Ohio-2822, citing *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶39} Appellant has not established ineffective assistance of defense trial counsel and the trial court did not abuse its discretion in overruling his petition for post-conviction relief.  Appellant's two assignments of error are therefore overruled.

## CONCLUSION

{¶40} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.